IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JACQUELINE TATE                                                                    PLAINTIFF

VS.                                                      CIVIL ACTION NO. 1:07CV310-SA-DAS

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                   DEFENDANT

## REPORT AND RECOMMENDATION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security ("Commissioner") denying the applications of the plaintiff, Jacqueline Tate, for a period of disability, disability insurance benefits, and supplemental security income benefits. The parties have not consented to have a magistrate judge conduct all the proceedings in this case; therefore, the undersigned submits this report and recommendation to the United States District Judge.

## I. FACTUAL AND PROCEDURAL HISTORY

On July 7, 2004, the plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income benefits, alleging an onset of disability as of May 28, 2004. The applications were denied both initially and upon reconsideration, and the plaintiff timely requested and was granted a hearing before an administrative law judge ("ALJ"). In a decision dated February 16, 2007, the ALJ found that the plaintiff was not disabled. The ALJ's decision rested as the final decision of the Commissioner when the Appeals Council, after considering additional evidence submitted by the plaintiff, denied her request for review on November 2, 2007. The ALJ's final decision is now ripe for review under section 205(g) of the Social Security Act. 42 U.S.C. § 205(g).

The plaintiff was born in 1964 and was 42 years of age on February 16, 2007, the date of the ALJ's hearing decision. She has at least a high school education. Her past relevant work includes work as a child support enforcement officer and a tax preparer. She alleged she became disabled on may 28, 2004, because of neurological problems, severe headaches, problems with concentration, emotional anxiety, depression, and high blood pressure. Nevertheless, after a review and evaluation of the medical evidence of record and the subjective testimony, the ALJ found the plaintiff not disabled. Contrary to the plaintiff's claim of disability, the ALJ found that she had the residual functional capacity to perform jobs that exist in significant numbers in the national economy.

## II. LAW AND STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining her burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2] First, claimant must prove she is not currently engaged in substantial gainful activity.[3] Second, the claimant must prove her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the claimant is disabled if she proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02 (1998).[5] Fourth, the

---

[1] *See* 20 C.F.R. §§ 404.1520 (2008).

[2] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[3] 20 C.F.R. §§ 404.1520(b) (2008).

[4] 20 C.F.R. §§ 404.1520(c) (2008).

[5] 20 C.F.R. §§ 404.1520(d) (2008). If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing

2

claimant bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work.[6] If the claimant is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[7] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that she cannot, in fact, perform that work.[8]

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v.*

---

substantial gainful activity. 20 C.F.R. §§ 404.1525 (2008).

[6]20 C.F.R. §§ 404.1520(e) (2008).

[7]20 C.F.R §§ 404.1520(f)(1) (2008).

[8]*Muse*, 925 F.2d at 789.

*Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence preponderates against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell*, 862 F.2d at 475. If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

### III. ANALYSIS

In this case the plaintiff presents two issues for review: 1) Whether Appeals Council erred as a matter of law by failing to follow its own policies and procedures regarding legal arguments and additional evidence submitted to it, and 2) whether the ALJ and Appeals Council failed to follow their own internal procedures and the law in the Fifth Circuit with regard to evidence from other sources. In view of the findings herein, the court finds it necessary to offer full discussion on the first issue only.

The plaintiff argues that as a result of the Appeals Council's failure to follow its own policies and procedures, it failed to find that she met Listing 12.02, despite "overwhelming evidence in support of such a finding." Specifically, the plaintiff contends the Appeals Council failed to consider her brief outlining the errors committed by the ALJ and new evidence and materials pertinent to her request for review. On September 21, 2007, in support of her request for review, the plaintiff submitted an eleven-page brief outlining alleged errors committed by the ALJ along with a report of a neuropsychological examination conducted by Eldridge Fleming, Ph.D., and Dr. Fleming's Medical Assessment of Ability to Do Work Related Activities (Mental). In its November 2, 2007, Notice of Appeals Council Action, the Appeals Council denied the plaintiff's request for review and noted that it had considered additional evidence.

In her brief before the Appeals Council, the plaintiff essentially argued that both prior to and immediately following her hearing before the ALJ, she requested in writing that the ALJ obtain a medical expert's opinion regarding whether her condition met or medically equaled Listing 12.02 of the regulations. The ALJ has a duty "'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (quoting *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)). Having considered this record, the court finds the ALJ failed to consider fairly the claims raised by the plaintiff in her disability case.

Listing 12.02 of the Listing of Medical Impairments outlines the criteria for a finding of an organic mental disorder. It states in pertinent part:

> 12.02 Organic Mental Disorders: Psychological or behavioral abnormalities associated with a dysfunction of the brain. History and physical examination or laboratory tests demonstrate the presence of a specific organic factor judged to be etiologically related to the abnormal mental state and loss of previously acquired functional abilities.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> **A.** Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following:
>
> **1.** Disorientation to time and place; or

**2.** Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or

**3.** Perceptual or thinking disturbances (e.g., hallucinations, delusions); or

**4.** Change in personality; or

**5.** Disturbance in mood; or

**6.** Emotional liability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or

**7.** Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the

5

Luria-Nebraska, Halstead-Reitan, etc.;

AND

**B.** Resulting in at least two of the following:

**1.** Marked restriction of activities of daily living; or

**2.** Marked difficulties in maintaining social functioning; or

**3.** Marked difficulties in maintaining concentration, persistence, or pace; or

**4.** Repeated episodes of decompensation, each of extended duration;

OR

**C.** Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

**1.** Repeated episodes of decompensation, each of extended duration; or

**2.** A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

**3.** Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.02. Under Listing 12.00 Mental Disorders, a claimant will be found to have a listed mental impairment when the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied.

In November 2004, Philip Drumheller, Ph.D., conducted a Comprehensive Mental Status Evaluation of the plaintiff. Upon examination, the plaintiff's psychomotor activity was within normal limits. Dr. Drumheller found the plaintiff was functioning within the low average to average range of intelligence and made a diagnosis of moderate major depressive disorder, single episode. He found the plaintiff's prognosis was guarded because her depression appeared to be chronic in

6

nature and moderate in severity and she was receiving no real treatment at the time. Accordingly, he recommended that she see a medical doctor. Dr. Drumheller opined that the plaintiff was only mildly impaired in her ability to perform routine repetitive tasks and receive supervision and only mildly to moderately impaired in her ability to interact with coworkers. He determined that her concentration and attention, however, were only poor to fair.

In October 2005, the plaintiff underwent a neuropsychological examination conducted by Edward L. Manning, Ph. D. at the request of the Public Employee's Retirement System (PERS). Dr. Manning conducted and extensive interview of the plaintiff and administered numerous tests, including but not limited to I.Q., memory, attention and speed processing, visual motor and visual, and the Minnesota Multiphasic Personality Inventory-Revised ("MMPI-II"). The plaintiff's performance on nearly all tests was in the low average to average range and within the normal limits, and Dr. Manning noted only slight to moderate difficulty on performance of some tasks. Though personality measures from the MMPI-II reflected a "fairly unstable" psychological profile with significant features of depression and anxiety, other data from the exam strongly suggested over-reporting of pain symptom complaints and symptom magnification. Dr. Manning concluded that there was no evidence for "any significant cognitive dysfunction that could serve as a limiting factor" to the plaintiff's condition and recommended that she consider consultation with a psychologist to address her depression and psychological/behavioral aspects of pain and with a psychiatrist for consideration of medication management.

The plaintiff was referred to Dr. Drumheller for another psychological evaluation in 2006. The plaintiff told doctor Dr. Drumheller that she was taking psychotropic medications, inlcuding Effexor and Nortriptyline, and that they had helped. Dr. Drumheller noted that the plaintiff's thought processes were connected and psychomotor activity was within normal limits and that the results of

testing were believed to be valid. The results of I.Q. testing placed the plaintiff's level of intellectual functioning within the upper end of the low average range and her achievement in the areas of reading, spelling, and arithmetic resulted in standard scores. Dr. Drumheller opined that said results taken together placed the plaintiff within the low average range of intelligence and that she did not seem to be remarkably impaired intellectually. He also found the plaintiff's major depressive disorder appeared to be in at least partial remission in light of her report of having a favorable response to her current medication regimen. Finally, Dr. Drumheller opined that the plaintiff was mildly impaired in her ability to perform routine repetitive tasks, interact with coworkers, and receive supervision. Her concentration and attention were believed to be fair.

Following the ALJ's unfavorable decision, at the request of her attorney, the plaintiff underwent a neuropsychological examination conducted by Dr. Fleming in April 2007. Dr. Fleming found the plaintiff had major deficits in the emotional area. He opined that her prognosis for therapeutic intervention was generally poor because her problems were chronic. In order to stabilize her condition, hospitalization, as well as psychopharmocological intervention, might be required. Dr. Fleming also prepared an assessment of the plaintiff's capacity for mental work-related activities. He assessed "marked" limitations in the plaintiff's ability to make occupational adjustments and found she had "marked" restrictions of her activities of daily living. Dr. Fleming went further to give an opinion regarding whether the plaintiff 's condition met the components of Listing 12.02. Dr. Fleming found that the plaintiff's condition met the threshold requirement of 12.02 in that her organic brain disorder was etiologically linked to her abnormal mental state and loss of previously acquired functional abilities. He further found that she met the A criteria in that she demonstrated a loss of specific cognitive abilities or affective changes, disturbance in mood and the requisite loss of measured intellectual ability. He also found the plaintiff met the B criteria in that she

demonstrated both marked restriction of activities of daily living and marked difficulties in maintaining social functioning.

In this case the ALJ failed to consider the medical evidence before him under Listing 12.02. And, though the plaintiff timely submitted briefing on the ALJ's failure and new medical proof that her impairment met the components of Listing 12.02, the Appeals Council failed to address the ALJ's failure and failed to address the new evidence. *See Kinash v. Callahan*, 129 F.3d 736, 738-39 (5th Cir. 1997)(finding that medical proof from a physician that the plaintiff did not meet a listing was determinative of the issue of whether his impairment met a listed impairment). Because the Appeals Council offered no discussion whatsoever on its reasoning for denying the plaintiff's request for review in the face of such evidence, the court finds the Appeals Council failed to consider the evidence properly, and there can be no finding that the Commissioner's decision is supported by substantial evidence. Accordingly, the case should be remanded for the ALJ to consider whether the plaintiff's impairment met the requirements for Listing 12.02. *See Epps v. Harris*, 624 F.2d 1267, 1272-73 (5th Cir. 1980).

Finally, because the record indicates that the Commissioner also failed to consider properly the disability findings of the Board of Trustees Public Employee's Retirement System of Mississippi and the plaintiff's November 2004 Employment Questionnaire, on remand the ALJ shall consider this evidence along with the entire record in making a disability determination.

## IV. RECOMMENDATION

Based on the foregoing findings and conclusions, it is recommended that the case be remanded to the Commissioner for further proceedings.

The parties are referred to 28 U.S.C. §636(b)(1)(B) and Fed. R. Civ. P. 72(b) for the

appropriate procedure in the event any party desires to file objections to these findings and recommendations.  Objections are required to be in writing and must be filed within ten (10) days of this date and "a party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court . . . ." *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*) (citations omitted).

      Respectfully submitted this 17th day of February 2009.

                                          /s/ David A. Sanders
                                          UNITED STATES MAGISTRATE JUDGE